IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMANUEL NOEL | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE BOEING COMPANY, | : | No. 09-3613 |
|     Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                                                September 21, 2011

      Plaintiff Emmanuel Noel, an African American born in Haiti, brings this action against his former employer, the Boeing Company, alleging violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). Noel asserts that he was issued disciplinary memoranda, subjected to a hostile work environment, and ultimately discharged due to discrimination based on his race and national origin and in retaliation for his previously filing a Title VII lawsuit and charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Currently before the Court is Boeing's motion for summary judgment. For the following reasons, the motion is granted.

I.     BACKGROUND

      Boeing makes commercial jetliners and military aircraft. (Def.'s Mot. for Summ. J. Ex. 5 [Decl. of Arthur Maull] ¶ 1.) Noel worked at Boeing for approximately 18 years, most recently at its Ridley Park, Pennsylvania facility, before he was terminated from his position as aircraft mechanic on December 5, 2008. (Compl. ¶¶ 5, 7; Pl.'s Resp. to Mot. for Summ. J. Ex. 25 [12/5/08 Corrective Action Memo].) In 2006, Noel filed a lawsuit against Boeing alleging violations of Title VII and the PHRA. *See Noel v. Boeing Co.*, Civ. A. No. 06-2673. Following a

bench trial, judgment was entered in favor of Boeing on May 8, 2008.

Throughout 2008, Noel was assigned to the second shift in Shop 3488, the final assembly area for the V-22 Osprey military helicopter. (Pl.'s Resp. to Mot. for Summ. J. Ex. 6 [Dep. of Emmanuel Noel] at 173, 186-87, 190-92.) Noel was an hourly employee and member of the UAW Local 1069 (the "Union"); accordingly, the terms of his employment were governed by a collective bargaining agreement (the "CBA"). (Noel Dep. at 174-75, 188; Def.'s Mot. for Summ. J. Ex. 7 [Boeing-UAW Local 1069 Production and Maintenance Agreement].) Noel's direct supervisor at the time was Charles Moyer, who in turn reported to Arthur Maull, the second-level supervisor. (Noel Dep. at 214, 216.) Maull reported to the director of operations of the V-22 program, a position held by Tony Martin until July 2008 and then by James Folmar. (Maull Decl. ¶ 4.) In 2008, Noel was issued a series of Corrective Action Memos ("CAMs") that eventually culminated in his discharge from Boeing.

### A. The July 14, 2008 CAM

On Friday, June 27, 2008, Moyer asked Noel whether he wanted to work overtime that weekend, and Noel agreed. (Noel Dep. at 334; Pl.'s Resp. to Mot. for Summ. J. Ex. 8 [Dep. of Charles Moyer] at 15.) Noel was aware that a supervisor must expressly approve any overtime, that overtime was normally limited to six hours on the weekends, and that Sunday overtime had not been permitted in his shop for months. (Noel Dep. at 328-34; Def.'s Mot. for Summ. J. Ex. 15 [Statement of Emmanuel Noel to Boeing EEO Investigator Todd Schroeder] at 3.) Because Moyer asked him to work over the "weekend," rather than "tomorrow" as he had done on previous Fridays, Noel assumed that he should work on both Saturday and Sunday. (Noel Dep. at 355.) Noel testified that other employees from Shop 3488 worked that Sunday, but time records

indicate that he was the only employee who charged time. (Noel Dep. at 336; Def.'s Mot. for Summ. J. Ex. 59 [Boeing Time Records].) On July 14, 2008, Noel was issued a CAM for unauthorized performance of work, including seven hours on Saturday and seven hours on Sunday. (Pl.'s Resp. to Mot. for Summ. J. Ex. 15 [7/14/08 CAM]; Noel Dep. at 329.) Noel refused to sign the CAM, calling it a "setup," and filed a grievance through the Union. (Noel Dep. at 352-53; Pl.'s Resp. to Mot. for Summ. J. Ex. 16 [Grievance for 7/14/08 CAM].)

### B. The July 30, 2008 CAM

On July 30, 2008, Noel received a CAM for mischarging 10.4 hours to an aircraft move on July 2, 2008 that did not take place until five days later. (Pl.'s Resp. to Mot. for Summ. J. Ex. 17 [7/30/08 CAM].) Noel refused to sign the CAM because he claimed he could not remember the incident. (Pl.'s Resp. to Mot. for Summ. J. at 9; Noel Dep. at 369; 7/30/08 CAM.) Once again, Noel filed a grievance through the Union. (Pl.'s Mot. for Summ. J. Ex. 18 [Grievance for 7/30/08 CAM].)

### C. The September 22, 2008 CAM and Suspension

On September 22, 2008, Noel was issued another CAM for charging 2.5 hours of overtime on four separate weekdays. (Pl.'s Resp. to Mot. for Summ. J. Ex. 19 [9/22/08 CAM].) Noel testified that Maull told him to "take some extra time" to clean the shop and aircraft, without specifying the amount of overtime he was to work. (Noel Dep. at 378-82.) Noel was aware, however, of a general policy limiting overtime to 2 hours on weekdays. (Noel Dep. at 329.)

As a result of this CAM, Noel was suspended without pay for one day. (9/22/08 CAM.) The September 22, 2008 CAM referenced two earlier CAMs for the same category of violation. (*Id.*) One was the July 14, 2008 CAM for unauthorized overtime. (*Id.*) The other was a CAM

issued on July 16, 2008 for defective work product. (*Id.*; Pl.'s Resp. to Mot. for Summ. J. Ex. 20 [7/16/08 CAM].) The July 16, 2008 CAM was later rescinded. (Pl.'s Resp. to Mot. for Summ. J. Ex. 21 [Grievance for 7/16/08 CAM].) Noel alleges that his one-day suspension was imposed for the unauthorized overtime "in conjunction with" the prior CAMs listed, including the one that was eventually rescinded. (Pl.'s Resp. to Mot. for Summ. J. at 10.)

Noel filed a grievance through the Union for the September 22, 2008 CAM. (Pl.'s Resp. to Mot. for Summ. J. Ex. 22 [Grievance for 9/22/08 CAM].) He also filed a Charge of Discrimination with the EEOC based in part on the one-day suspension. (Pl.'s Resp. to Mot. for Summ. J. Ex. 23 [10/22/08 EEOC Charge of Discrimination].)

### D.     The December 5, 2008 CAM and Termination

The second shift in Shop 3488 ran from 2:30 p.m. to 11:00 p.m., with two ten-minute breaks and one thirty-minute lunch break at set times. (Noel Dep. at 188-89.) Shop 3488 had at least three computers that Noel was allowed to use. (*Id.* at 194-95.) If there were not enough computers available to employees in Shop 3488 during their breaks, they would go to other departments in the facility to use their computers. (Moyer Dep. at 67.) Employees would also leave the shop occasionally to use the restroom, to access the racks that contained nuts and bolts, and to retrieve other materials and parts as needed. (Pl.'s Resp. to Mot. for Summ. J. Ex. 10 [Dep. of James Folmar] at 16-17.)

Noel testified that he used computers outside of his work area "[a]ll the time." (Noel Dep. at 275-76, 286.) In an August 2008 signed statement to Boeing's EEO investigator, Noel stated that Moyer verbally warned him "5-6 times or more" not to leave his work area. (Noel Statement to Schroeder at 2.) Also in August 2008, Boeing human resource generalist Ruth Shoup contacted

Noel following a report by Moyer and instructed him not to use computers outside of his work area. (Noel Dep. at 268, 414; Def.'s Mot. for Summ. J. Ex. 37 [Emails Between Emmanuel Noel and Ruth Shoup]; 10/22/08 EEOC Charge of Discrimination.) Noel was not formally disciplined at that time. (Noel Dep. at 414; Emails Between Emmanuel Noel and Ruth Shoup.) Folmar met with Noel in late November 2008 and instructed him to stay in his work area. (Noel Dep. at 255-59.)

On December 4, 2008, Noel left Shop 3488 without telling anyone and went to the Paint Shop looking for a particular size of paper that was unavailable in his work area. (*Id.* at 435-41.) A painter in the Paint Shop, Tom Vedisco, saw Noel there and reported the incident to management. (*Id.* at 438; Def.'s Mot. for Summ. J. Ex. 47 [Emails between James Folmar, Arthur Maull, et al.].) The following day, Noel was issued a CAM for leaving his work area without permission in violation of Folmar's instructions. (12/5/08 CAM.) Under Boeing's progressive disciplinary process, CAMs may be "used for progressive discipline if the employee subsequently engages in behavior that was the same as or similar to the behavior that caused the original memo to be issued." (Pl.'s Resp. to Mot. for Summ. J. Ex. 30 [Admin. of Emp. Corrective Action] at 8.) The December 5, 2008 CAM stated that this was Noel's third violation within the same category of misconduct—"Produce, design, and support our products and services"—in the last five months. (12/5/08 CAM.) As a result, Noel was fired. (*Id.*)

E.   **Noel's Allegations of Discrimination**

Noel claims that white employees sometimes received no or lesser discipline for the same conduct that led to his CAMs. Additionally, Noel points to several other incidents as evidence of discrimination and retaliation. First, Noel alleges that when Maull was his direct supervisor prior

to 2008, he would hit Noel on the back or head, although Noel never reported this to anyone. (*Id.* at 239-40, 242-47.) Second, on at least one occasion in 2008, Maull instructed Moyer to sit by the aircraft and watch Noel work. (*Id.* at 304-06.) Third, Noel testified that sometime in 2008, an inspector told him Moyer and Maull were planning to blame him for bad safety wiring, although he was never disciplined as a result. (*Id.* at 311-15.) Fourth, sometime in 2008 when Noel was in the Paint Shop, Vedisco asked him where he was from. (*Id.* at 251-52.) When Noel replied "Haiti," Vedisco said, "you don't belong here." (*Id.*) Fifth, in February 2008, Lewis Farah, a supervisor on another shift who had testified in Noel's prior lawsuit, "harassed" Noel by instructing him to get back to work and reaching for his chest in an attempt to pull off his work badge. (*Id.* at 480-89; Pl.'s Resp. to Mot. for Summ. J. Ex. 9 [7/29/08 EEOC Charge of Discrimination].) Sixth, two of Noel's coworkers found a copy of the May 2008 decision in the prior lawsuit in Shop 3488. (Noel Dep. at 326-28.) Seventh, in July 2008 Noel found a photograph of Boeing employees near Moyer's desk, and his face—but not the faces of other African American employees—had been scratched out. (*Id.* at 531; Pl.'s Resp. to Mot. for Summ. J. Ex. 7 [Photograph of Boeing Emps.].) Finally, on or about July 31, 2008, Moyer told Noel to stop using the computer while bypassing white employees who were also using the computers. When Noel complained, Moyer allegedly told a white employee to stop using the computer as well. (Noel Dep. at 297-99; Pl.'s Resp. to Mot. for Summ. J. Ex. 14 [Dep. of Richard Dempsey] at 18-19.)

  F.  **The Arbitration Decision**

  Shortly after his discharge, Noel filed a grievance through the Union claiming violations of several provisions of the CBA, including the non-discrimination clause. (Pl.'s Resp. to Mot. for

Summ. J. Ex. 26 [Grievance for 12/5/08 CAM].) Noel pursued his claims through binding arbitration pursuant to the CBA. (CBA Art. VI, § 7.) After three days of hearings in July and November 2009, the arbitrator issued a decision on March 10, 2010, concluding that Noel's "discharge was the result of his own actions and was for just cause." (Pl.'s Resp. to Mot. for Summ. J. Ex. 3 [Arb. Decision] at 22.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.  DISCUSSION

Noel alleges that Boeing discriminated against him and subjected him to a hostile work

environment in violation of Title VII and the PHRA. "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Therefore, this Court will analyze Noel's discrimination, hostile work environment, and retaliation claims under a Title VII framework, and the conclusions will apply to his PHRA claims as well. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000).

### A.     The Weight of the Arbitrator's Decision

As a preliminary matter, Boeing argues that the Court should give great weight to the arbitrator's determination that Noel was discharged for just cause, while Noel argues that the Court should disregard the arbitration decision. A prior arbitration decision finding that an employee was discharged for just cause does not preclude a Title VII claim arising from the same set of facts. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 & n.21 (1974). The court must consider the plaintiff's claim de novo, but "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate," taking into account factors such as "the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators." *Id.*

The nondiscrimination clause of the CBA closely tracks the language of Title VII—although it does not mention retaliation—and was one basis for the grievance Noel submitted to arbitration. *Compare* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination because of "race, color, religion, sex, or national origin") *with* CBA Non-Discrimination Clause (prohibiting discrimination because of "Union activity, age, race, color, religion, national origin, status as a disabled or Vietnam era veteran, gender, marital status or the presence of a disability"). The

neutral arbitrator's decision is based on a substantial record, including a three-day hearing, the sworn testimony of ten witnesses, and post-hearing briefs from both sides. However, the decision contains little analysis of Noel's discrimination and retaliation claims, instead focusing on Boeing's justifications for terminating him. Balancing these factors, the Court will consider the arbitrator's decision as one piece of evidence supporting Boeing's position. Even in the absence of the arbitrator's decision, the Court would grant summary judgment to Boeing.

### B. Noel's Discrimination Claims

Title VII prohibits employers from discriminating against employees with respect to the conditions of their employment due to their race or national origin. 42 U.S.C. § 2000e-2(a). A discrimination claim under Title VII triggers a three-step burden-shifting analysis. *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 444 (3d Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must satisfy his initial burden of establishing a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) this occurred under circumstances that raise an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). The burden then shifts to the employer to offer a legitimate, nondiscriminatory basis for the challenged employment action. *Id.* Once this burden is met, the burden shifts back to the plaintiff to show that the employer's proffered reasons were pretextual. *Id.* To survive summary judgment, a plaintiff must carry this final burden by introducing direct or circumstantial evidence "from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." *Id*. (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999)).

Boeing does not dispute that Noel is a member of a protected class and that he was qualified for the position that he held. Nor does Boeing challenge Noel's assertions that his termination and the September 22, 2008 CAM, which led to a one-day suspension without pay, constitute adverse employment actions. The parties dispute, however, whether the July 14, 2008 and July 30, 2008 CAMs constitute separate adverse employment actions. The Court agrees with Boeing that the July 30, 2008 CAM for mischarging time to an aircraft move, which resulted only in a written warning and caused no material change in Noel's employment, is not an adverse employment action. *See Mieczkowski*, 414 F. App'x at 446-47; *Weston v. Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001); *Rizzo v. PPL Serv. Corp.*, Civ. A. No. 03-5781, 2005 WL 913091, at *8 (E.D. Pa. Apr. 19, 2005). Therefore, Noel has not made out a prima facie case with regard to the July 30, 2008 CAM. Because the parties dispute the extent to which the July 14, 2008 CAM was taken into account in the one-day suspension resulting from the September 22, 2008 CAM, the Court will treat the July 14, 2008 CAM as an adverse employment action.

Noel must show that each of the adverse employment actions he has identified occurred under circumstances that raise an inference of intentional discrimination. This element may be satisfied with evidence that the plaintiff was treated less favorably than similarly situated employees who are not in the plaintiff's protected class. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008). With regard to the July 14, 2008 CAM for working unauthorized overtime, Noel notes that in 2002 or 2003, Moyer gave a white employee who worked unauthorized overtime on weekends only a verbal reprimand. (Pl.'s Resp. to Mot. for Summ. J. at 32; Moyer Dep. at 60.) Boeing responds—and Noel does not dispute—that the company's policy

at that time was to issue verbal reprimands rather than written CAMs; the policy later changed to require written CAMs. (Def.'s Reply at 7 n.9; Moyer Dep. at 62, 66; Boeing Emp. Corrective Action Decision Making Process at 1.) Given the change in policy, the white employee was not "similarly situated in all relevant respects" to Noel, and this evidence of disparate treatment does not suggest intentional discrimination. *Wilcher v. Postmaster Gen.*, App. A. No. 10-3075, 2011 WL 3468322, at *2 (3d Cir. Aug. 9, 2011).

In connection with the December 5, 2008 CAM and termination, Noel alleges that a white employee was not disciplined for leaving his work area for over two hours on two occasions. (Pl.'s Resp. to Mot. for Summ. J. at 11.) He offers no evidence to support this claim, however. (Noel Dep. at 212, 420-25 (admitting that he never reported the white employee's absence and did not know whether the employee was ever disciplined).) Furthermore, the white employee is not a proper comparator because it is undisputed that Noel left his work area on a regular basis, not just twice. *See, e.g.*, *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 502 (6th Cir. 2010) (finding employee outside of protected class was not a proper comparator because the plaintiff had committed many more violations). Noel also asserts that Moyer once told him to stop using the computer while bypassing white employees who were also using the computers. (Pl.'s Resp. to Mot. for Summ. J. at 7-8; Noel Dep. at 296-303.) After Noel complained, Moyer allegedly told at least one white employee to stop using the computer as well. (*Id.*) In his deposition, however, Noel admitted that the white employees were not actually using the computer. (*Id.* at 493-94.)

The Court finds that Noel has not presented evidence sufficient to support an inference that the adverse employment actions were taken for discriminatory reasons. Moreover, even if Noel had made out a prima facie case for each adverse employment action, Boeing has offered

legitimate, nondiscriminatory explanations for its actions—Noel's charging overtime without authorization and disobeying a supervisor's instructions not to leave his work area. Therefore, the burden falls on Noel to demonstrate that Boeing's proffered reasons were merely pretexts for discrimination on the basis of race and national origin. For the reasons set forth below, Noel does not meet this burden.

The July 14, 2008 and September 22, 2008 CAMs were issued for charging unauthorized overtime, and in both instances Noel admitted that he worked more overtime than Boeing typically allowed. Therefore, the evidence establishes only that Noel was confused by his supervisors' instructions, not that the instructions were deliberately confusing or that Boeing management believed Noel was in compliance with the overtime rules and disciplined him anyway. *See Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 112 (3d Cir. 2003) (holding that even if a supervisor was wrong in believing that employee had engaged in intentional misconduct, this did not make his reason pretextual); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("[T]he factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent . . . ."). Even accepting Noel's assertion that the one-day suspension following the September 22, 2008 CAM was premised in part on the July 16, 2008 CAM for defective work product, this does not give rise to an inference of discriminatory intent since the July 16, 2008 CAM was not rescinded until *after* the issuance of the September 22, 2008 CAM. Noel has not pointed to any evidence that Boeing knew the July 16, 2008 CAM was improper when it gave him a one-day suspension or that Boeing could not have taken the same disciplinary measure regardless.

Noel testified that he left his work area on December 4, 2008, despite Folmar's directions.

The December 5, 2008 CAM and discharge were a direct result of Noel's failure to comply with these instructions. Noel was obligated to follow the instructions of his supervisors and management, and questioning the wisdom of such instructions does not demonstrate pretext. *Fuentes*, 32 F.3d at 765. Noel also argues that a lesser form of discipline was appropriate under Boeing's progressive discipline policy because the CAMs for unauthorized overtime belonged in a different category of misconduct than the December 5, 2008 CAM. (Pl.'s Resp. to Mot. for Summ. J. at 15-17.) But Boeing's disciplinary guide makes clear that both unauthorized performance of work and spending unauthorized time outside the work area are in the "Produce, design, and support our products and services" category. (Boeing Emp. Corrective Action Decision Making Process at 15-17.) Moreover, failure to follow a management directive is grounds for immediate discharge under Boeing's guidelines. (Boeing Emp. Corrective Action Decision Making Process at 16.) The arbitrator's determination that Noel's discharge was for just cause also supports the Court's conclusion that Boeing's proffered reasons were not pretextual. *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (holding that the decision of an "independent, neutral, and unbiased adjudicator that had the power to prevent the termination" was "highly probative of the absence of discriminatory intent in that termination"); *accord Webb v. Merck & Co., Inc.*, 450 F. Supp. 2d 582, 604-05 (E.D. Pa. 2006); *Edwards v. Merck & Co., Inc.*, Civ. A. No. 05-373, 2006 WL 1030281, at *3 (E.D. Pa. Apr. 18, 2006).

In short, no reasonable jury could find that the legitimate, nondiscriminatory reasons offered by Boeing are "unworthy of credence." *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). Because Noel has not made out a prima facie case of discrimination for each of his claims, or, in the alternative, has failed to

demonstrate that Boeing's reasons for acting were pretextual, the Court will grant summary judgment to Boeing on these claims.

      **C.**      **Noel's Hostile Work Environment Claim**

To establish a hostile work environment claim under Title VII, a plaintiff must demonstrate that: (1) he suffered intentional discrimination because of his race or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or national origin in that position; and (5) the existence of respondeat superior liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). To satisfy the second element, "the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." *Weston*, 251 F.3d at 426. A court should consider several factors in determining whether an environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Whether conduct is pervasive and regular should be determined based on the totality of the circumstances. *Harris*, 510 U.S. at 23. Title VII is not a "general civility code," and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

Only one of the incidents cited by Noel as evidence of discrimination has any apparent relation to his race or national origin. Noel's encounter with Vedisco in the Paint Shop, in which

Vedisco told him "you don't belong here," could be interpreted as a reference to Noel's national origin. But Vedisco was a co-worker in a different shop, not Noel's supervisor, and an employer can be held liable for harassment by a non-supervisory co-worker "only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Huston*, 568 F.3d at 104-05. Noel does not claim that he ever reported the incident to management, nor does he argue that Boeing acted negligently in failing to discover it.

This isolated incident does not amount to a hostile work environment, and Noel has presented no evidence that the other incidents were in any way related to his race or national origin. *See Faragher*, 524 U.S. at 788. While "overt racial harassment is not required to show intentional discrimination," the "absence of such conduct often proves helpful when evaluating whether facially neutral conduct is driven by invidious motives." *Peace-Wickham v. Walls*, 409 F. App'x 512, 520 n.1 (3d Cir. 2010). The evidence suggests that Noel's interactions with his supervisors and co-workers were often confrontational, but this is not enough to make out a hostile work environment claim. *See Fairclough v. Wawa, Inc.*, 412 F. App'x 465, 469 (3d Cir. 2010) ("That [plaintiff] experienced personality conflicts resulting in a less than ideal work environment is simply not actionable under Title VII."). The allegation that Maull would hit Noel on the head or back, if true, is certainly troublesome, but there is no evidence to connect such behavior with a discriminatory purpose. Furthermore, much of the conduct identified by Noel does not rise to the level of harassment—for example, there is nothing out of the ordinary in a supervisor watching an employee work or telling him to get back to work. *See McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 423 (D.N.J. 2009) ("[B]eing closely supervised or micro-managed does not give rise to a hostile work environment claim."). Considering the totality of the

circumstances, the Court will grant summary judgment to Defendant on Plaintiff's hostile work environment claim.

### D. Noel's Retaliation Claims

Title VII bars discrimination against any employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" or opposed any employment practice deemed unlawful by the statute. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires that: (1) the plaintiff engaged in protected activity; (2) his employer took adverse action against him that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination"; and (3) there is a causal connection between the protected activity and the employer's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). The *McDonnell Douglas* burden-shifting analysis applies to retaliation claims. *Id.* at 342.

Noel's prior Title VII lawsuit against Boeing, which went to trial in July 2007 and was decided in May 2008, is protected activity that satisfies the first element of Noel's prima facie case. In particular, Noel argues that the issuance of the May 2008 decision triggered retaliation by Boeing. (Pl.'s Resp. to Mot. for Summ. J. at 38; Noel Dep. at 319.) Noel's filing of EEOC charges on July 29, 2008 and October 22, 2008 was protected activity as well.

Noel has also satisfied the second element of his prima facie case, the requirement of an adverse employment action. As set forth above, the Court assumes the July 14, 2008 and September 22, 2008 CAMs for unauthorized overtime were adverse employment actions because they led to a one-day suspension without pay. The December 5, 2008 CAM and discharge also constitute an adverse employment action.

Noel has not, however, shown a causal connection between the protected activity and

Boeing's adverse employment actions. There is evidence that the individuals involved in disciplining Noel became aware of his lawsuit and/or EEOC charges prior to taking adverse actions. (Moyer Dep. at 8-12; Shoup Dep. at 7-9; Folmar Dep. at 8-9.) Noel emphasizes that the July 14, 2008 CAM was issued "within weeks" of the May 8, 2008 decision in his prior lawsuit (Pl.'s Resp. to Mot. for Summ. J. at 39.) A time lapse of over two months is not "unusually suggestive" of a causal link between the protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007); *see also Brown v. Boeing Co.*, 468 F. Supp. 2d 729, 736 (E.D. Pa. 2007) ("Time periods as short as two months, without additional evidence, are not 'unnecessarily suggestive' to demonstrate causation."). Noel further notes that Folmar first learned of the lawsuit no more than 10 days before deciding to terminate him, but Folmar's ignorance of the lawsuit and EEOC charges when he instructed Noel not to leave his work area in November 2008 indicates that his concern about Noel's conduct predated any basis for retaliation. (Folmar Dep. at 8-9.) Therefore, temporal proximity alone cannot sustain Noel's prima facie case.

    Noel also relies on the discovery of a copy of the May 2008 court decision from his prior lawsuit in Shop 3488 as an additional piece of evidence in support of his retaliation claim. Noel admits that he does not know who placed the decision in the shop, but he contends that the decision must have been placed there in "an attempt to humiliate and embarrass" him. (Noel Dep. at 326-27; Pl.'s Resp. to Mot. for Summ. J. at 38.) This is entirely speculative. At most, the incident shows that someone in the shop was aware of Noel's lawsuit—not a causal connection between the protected activity and any adverse employment actions.

    Because Noel has not presented sufficient evidence of a causal connection between his protected activities and Boeing's adverse employment actions, he cannot make out a prima facie

case of retaliation.

## IV. CONCLUSION

Noel has failed to make out a prima facie case that Boeing discriminated against him in violation of Title VII and the PHRA. He has also failed to show that the legitimate, nondiscriminatory reasons Boeing has given for taking adverse employment actions were pretextual. Boeing's motion for summary judgment is therefore granted. An Order granting Boeing's motion as to all claims will be docketed separately.